# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **WILLIAM SHADELL and STEVEN SHISLER, Individually and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiffs,** | § § | **NO. 5:17-CV-00133-FB** |
| **vs.** | § § | |
| **CUDD PUMPING SERVICES, INC. and CUDD PRESSURE CONTROL, INC.,** | § § § § | |
| **Defendants.** | § § § | |

## DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION OF STEVEN SHISLER AND BRIEF IN SUPPORT

Defendants Cudd Pumping Services, Inc. and Cudd Pressure Control, Inc.,[1] (hereinafter collectively "Cudd" or "Defendants"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, submit this Motion to Dismiss and Compel Arbitration,[2] and respectfully show the Court as follows:

## I.
## INTRODUCTION

Plaintiff Steven Shisler ("Shisler") entered into Cudd's Mutual Agreement to Arbitrate Claims ("the Agreement") in which he agreed to arbitrate "any and all disputes … arising out of or related to [his]…employment," including claims based upon or related to "wages or other compensation claimed to be owed" and claims under the FLSA. The Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and covers Shisler's claims. The

---

[1] Cudd Energy Services is not a proper legal entity and is merely a marketing name.

[2] The Federal Arbitration Act, 9 U.S.C. §§ 3, 4, allows for dismissal of the action, and Defendants file this Motion in lieu of an Answer. To the extent necessary, Defendants also bring this Motion under Fed. R. of Civ. P. 12(b)(1) and/or 12(b)(6).

**DEFENDANTS' MOTION TO DISMISS AND COMPEL**
**ARBITRATION OF STEVEN SHISLER AND BRIEF IN SUPPORT – Page 1**

Agreement also requires Shisler to bring his claims individually and prohibits class or collective actions. Accordingly, Defendants request this Court order Shisler's claims to arbitration consistent with the terms of the Agreement and the FAA and dismiss Shisler's claims in the Complaint.

## II.
## MATERIAL FACTS

Cudd is an oil and gas field service provider with over 2,000 employees in more than 60 markets, located across North America and selected international markets. (Ex. 1, Declaration of Peggy Laughlin ("Decl."), ¶2). Cudd's operations expand throughout the United States, serving customers in and from many states, and using interstate transportation and communication to run its business. *Id*. Cudd's service capabilities include stimulation, coiled tubing, e-coil, hydraulic workover, nitrogen, slickline/braided line, electric line, industrial nitrogen, water management, well control, and special services. *Id.*

### A.   <u>Shisler Agreed to Arbitration with Defendants.</u>

Shisler worked as a Service Supervisor in Cudd's location in Corpus Christi, Texas from November 2, 2015 until his resignation on or about September 14, 2016. (Decl. ¶4). Shisler expressly agreed to arbitrate his employment-related claims individually, and not on a class or collective basis – approximately 4 months prior to his resignation. (Decl. Ex. A)  On May 2, 2016, Shisler was provided with a copy of the Mutual Agreement to Arbitrate Claims. (Decl. ¶5, Ex. A). He reviewed the document and signed it to indicate he agreed with the terms. *Id.*

### B.   <u>Shisler's Claims are Covered by the Agreement</u>

The Agreement expressly requires arbitration of Shisler's claims against Defendants. The Agreement provides that it is an agreement between Shisler and RPC, Inc. ("EMPLOYER") and any reference to EMPLOYER "also means its parent companies, direct and indirect

subsidiaries, affiliates, and all successors and assigns of any of them and specifically includes the entity(ies) that employed or employs Employee and/or that Employee has applied or applies for employment with, including but not limited to Patterson Services, Inc., Cudd Energy Services, Inc., **Cudd Pumping Services, Inc., Cudd Pressure Control, Inc.,** Bronco Oilfield Services, Inc., Thru Tubing Solutions, Inc., Chippewa Sand Company, LLC, and International Training Services, Inc. (which does business as "Well Control School"), all of which may enforce and are bound by this Agreement."  (Decl. Ex. A) (emphasis added).

Further, under the "Covered Claims/Disputes" section, all disputes between the parties must be arbitrated:

> [T]his Agreement applies to any and all disputes, past, present or future, that may arise between Employee and EMPLOYER, including without limitation any dispute arising out of or related to Employee's application for employment, employment, separation of employment with EMPLOYER . . .
>
> * * * * *
>
> This Agreement applies, without limitation, to claims based upon or related to…wages or other compensation claimed to be owed…  The Agreement specifically covers, without limitation, claims under…**the Fair Labor Standards Act**…and state or local statutes, if any, addressing the same or similar subjects.

(Decl. Ex. A) (emphasis added).  Shisler filed this instant suit alleging a violation of FLSA. Complaint, ¶1.  In his Complaint, Shisler alleges that Defendants violated the FLSA by failing to pay him overtime compensation for the hours in excess of forty hours in a single week that he was made to work.  Complaint, ¶1.  Shisler's claims are indisputably covered under the clear and unambiguous terms of the Agreement and, therefore, the claims must be submitted to binding arbitration on an individual basis.

**C.      The Agreement Precludes Class and Collective Claims**

Shisler brings this case as a putative collective action under 29 U.S.C. § 216(b). However, the Agreement, in the section entitled "Class Action Waiver" expressly precludes such actions:

> Employee and EMPLOYER agree to bring any claim or dispute in arbitration **on an individual basis only, and not as a class or collective action**; Employee and EMPLOYER waive any right for a dispute or claim to be brought, heard, or decided as a class or collective action, and the arbitrator has no power or authority to preside over a class or collective action ("Class Action Waiver").

(Decl. Ex. A) (emphasis added).  Because the Agreement (a) covers all of Shisler's claims for relief, (b) precludes class and collective claims, and (c) requires that the Court enforce the Class Action Waiver,[3] Shisler is compelled to arbitrate his claim on an individual basis only. Therefore, the Court must strike Shisler's putative collective action claims and compel him to arbitrate his claim individually.

**III.**
**LEGAL AUTHORITIES**

**A.      The FAA is Controlling**

The FAA applies to agreements "involving commerce." 9 U.S.C. § 2. "A written provision in any … contract … involving commerce to settle by arbitration a controversy thereafter arising … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

---

[3] "Regardless of anything else in this Agreement and/or the American Arbitration Association ("AAA") rules or procedures, any disputes as to the interpretation, applicability, enforceability or formation of the Class Action Waiver may only be determined by a court and not an arbitrator." (Decl. Ex. A).

Here, the Agreement expressly provides it is governed by the FAA, which evidences a transaction involving commerce. (Decl. Ex. A). Further, Cudd's operations expand throughout the United States, serving customers in and from many states, and using interstate transportation and communication to run its business. (Decl. ¶2). Accordingly, the Agreement involves interstate commerce and is covered by the FAA.

Because the FAA governs the Agreement, the Supremacy Clause of the U.S. Constitution (U.S. CONST. art. VI, cl. 2) requires that Shisler's claims be arbitrated notwithstanding any contrary state law, and the FAA preempts all otherwise applicable or conflicting state laws. *Preston v. Ferrer*, 552 U.S. 346, 356-57 (2008); *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 219 (5th Cir. 1997). Indeed, the FAA created a body of federal substantive law, which is applicable in state and federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 10-12 (1984). ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration."). Indeed, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

The FAA was enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Allied-Bruce Terminix Cos.*, 513 U.S. 265, 270 (1995); *Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001) (describing significant benefits of arbitrating claims in employment context). The FAA established a federal

policy in favor of arbitration.  *See Rent-A-Center, West v. Jackson*, 130 S.Ct. 2772, 2777 (2010); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Southland Corp.*, 465 U.S. at 10 (1984); *Personal Security & Safety Sys. Inc. v. Jaffe*, 297 F.3d 388, 392 (5th Cir. 2002); *Helms v. Pioneer Energy Servs. Corp.,* 2016 WL 5720863, at *2 (W.D. Tex. Sept. 30, 2016).  This "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  The United States Supreme Court has warned against judicial rulings designed to erode FAA precedence "by indirection."  *Circuit City Stores, Inc.*, 532 U.S. at 122.  Instead, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id*. at 24-25; *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).  District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).

**B.**     **The Arbitration Agreement is Valid and Enforceable and Covers the Subject Matter of the Complaint**

     In deciding whether to compel arbitration, the trial court is tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate; and (2) whether the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002); *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).  ("Once the movant

establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims.").

    1.    <u>The Agreement is Valid and Enforceable.</u>

To determine whether a valid and enforceable agreement to arbitrate exists, the arbitration agreement must be examined under Texas state law regarding contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The instant arbitration agreement meets the requirements of Texas substantive contract law and, thus, is a valid and enforceable agreement by Shisler to arbitrate his claims. It is undisputed that Shisler entered into the Agreement with Defendants, as evidenced by his signature. (Decl. Ex. A). There can be no doubt that the parties entered into a valid arbitration agreement.

Additionally, Shisler's signature evidences his clear and definitive acceptance of the offer. This alone is enough for Shisler to be subject to the Agreement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms"). A meeting of the minds and mutual assent are clear because the Agreement is entered into between Shisler and Defendants, and the obligations to arbitrate are clearly stated and mutual. (Decl. Ex. A). And, because the Agreement was signed by Shisler, there can be no doubt that it was properly executed, and acted upon as an agreement. After signing and accepting the Agreement, Shisler continued to work for Cudd until his resignation on or about September 15, 2016. (Decl. ¶5.)

Finally, there is ample consideration to support Shisler's agreement to arbitrate. Shisler and Defendants gave up the right to litigate their claims as consideration for the Agreement. (Decl. Ex. A). "Mutual promises to submit all employment disputes to arbitration is sufficient consideration for such agreement." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex.

2010) (mutual promises to arbitrate is sufficient consideration).  There is simply no doubt that the parties entered into a valid and enforceable arbitration agreement.

      2.    <u>The Subject Matter of the Complaint is Covered by the Agreement</u>

Shisler's claims fall within the scope of the Agreement.  The Agreement is unambiguous and sufficiently broad to cover Shisler's FLSA claims.  The Agreement applies "without limitation, to claims based upon or related to…wages or other compensation claimed to be owed…The Agreement specifically covers, without limitation, claims under…**the Fair Labor Standards Act**…and state or local statutes, if any, addressing the same or similar subjects." (Decl. Ex. A) (emphasis added).  Arbitration was intended to be the exclusive remedy for all claims relating to the employment of Shisler.  Shisler's claims fall squarely within the scope of the Agreement.  The existence of a valid and enforceable arbitration agreement that covers the subject matter of this dispute therefore cannot be denied.

**C.**    <u>**Under Controlling Authority from the United States Supreme Court the Class/Collective Action Waiver Must Be Enforced**</u>

Defendants are entitled to an order striking Shisler's collective action claims and compelling Shisler to submit his individual claims to arbitration under the Agreement.  Besides requiring that Shisler arbitrate his claims, the Agreement also prohibits Shisler from pursuing collective action claims.[4]  As the Supreme Court confirmed in *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, it is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent."   130 S. Ct. 1758, 1764-65 (2010).  As such, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual

---

[4] "<u>**Class Action Waiver**</u>. Employee and EMPLOYER agree to bring any claim or dispute in arbitration on an individual basis only, and not as a class or collective action; Employee and EMPLOYER waive any right for a dispute or claim to be brought, heard, or decided as a class or collective action, and the arbitrator has no power or authority to preside over a class or collective action ("Class Action Waiver")."  (Decl. Ex. A).

basis for concluding that the party *agreed* to do so." *Id.* Here, the parties did <u>not</u> agree to class arbitration. <u>They expressly prohibited it</u>.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center West v. Jackson*, 561 U.S. at 67. Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. Similarly, Section 3 of the FAA authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement . . . [.]" 9 U.S.C. § 3. The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989); *see Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 53-54 (1995) (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("The 'principal purpose' of the FAA is to ensure that private arbitration agreements are enforced according to their terms."). Therefore, the collective action waiver must be enforced as written. These principles must be applied here, as controlling Supreme Court authority requires that the collective action waiver be enforced by this Court.

The United States Supreme Court in *Concepcion* upheld the enforceability of arbitral class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle of federal arbitration law that arbitration agreements are to be enforced as written. The Supreme Court held that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA because it impermissibly interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA. *Concepcion*, 131 S. Ct. at 1753. In yet another recent case, the Supreme Court in *Italian Colors Restaurant* strongly

reiterated that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013). The Supreme Court reversed the Second Circuit Court of Appeals and enforced a class action waiver in an arbitration agreement. *Id*. at 2312. The Supreme Court held that a class-action waiver provision in a FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 2311-12.

The United States Court of Appeals for the Fifth Circuit has also consistently upheld the enforceability of class and collective action waivers. *See Carter v. Countrywide Home Loans, Inc*., 362 F.3d 294, 298 (5th Cir. 2004); *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir., 2015). Therefore, this Court should strike Shisler's class claims and compel individual arbitration.

**D.      The Court Should Dismiss Shisler's Claims**

Where, as here, all of Shisler's claims are arbitrable, a stay is unnecessary, and his claims should be dismissed. *See, e.g., Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992); *See also e.g.,  Helms,* 2016 WL 5720863, at *5. Accordingly, the Court should dismiss Shisler's claims and compel him to individual arbitration. Alternatively, the Court should stay the proceedings pending arbitration. 9 U.S.C. § 3.

## IV.
## CONCLUSION

Shisler agreed to arbitrate disputes arising out of his employment. The Agreement is enforceable, and Shisler's claims fall within the scope of the Agreement. Moreover, the Agreement requires individual, bilateral arbitration and prohibits class or collective proceedings.

The Court should dismiss or stay Shisler's claims and order Shisler to individual, bilateral arbitration.

Dated April 5, 2017                          Respectfully submitted,


/s/ David B. Jordan
David B. Jordan (Lead Counsel)
Texas State Bar No. 24032603
Federal ID No. 0040416

LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951.9400 (Phone)
713.951.9212 (Fax)
djordan@littler.com

Saba H. Alvi
Texas State Bar No. 24082324

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, Texas 75201
214.880.8197 (Phone)
214.722.1476 (Fax)
salvi.@littler.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2017, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system that will send notification of such filing to the following:

Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 S. Shackleford Road, Suite 411
Little Rock, AR  72211
josh@sanfordlawfirm.com


                        */s/ David B. Jordan*                      
                        David B. Jordan

Firmwide:146840045.1 083687.1000